At this time, we'll hear the case being heard in tandem, and that is Judkins v. Giddens. Good morning, Your Honor. Good morning. Your Honors, my name is Gregory Reed, and I represent the appellant Wayne Judkins. When Lehman Brothers hired Wayne Judkins in January 2008, there were three tranches of compensation that Lehman promised Mr. Judkins. Two were under a written contract. In the contract, he was to receive $200,000 in salary and a minimum bonus of $800,000. Additionally, at the same time, he was promised orally that he would receive a commission compensation based on his own personal earnings and to be shared with his co-broker, his co-trader. What do you say he was promised? How much do you say he was promised? Well, he was stated, he was told that he would receive an additional amount of compensation. And it was understood- It was reasonably expected. Yes, 10 to 12% of the profit and loss. And important fact, he and his co-trader earned Lehman $55 million that year. So they were to get 10 to 12% of that amount. Now, if Lehman hadn't gone under, but they just had a bad last quarter, even if the facts are the way you said that somebody said to him, well, we're going to give you this bonus. Is it your position that they would still be obligated to give him the bonus, even if the numbers came out differently by the end of the year? Yes. Because they promised him a bonus? Yeah, yes, because, and this is the problem here, that there's been a conflation of the term bonus with the term commission. And clearly, if it were a bonus, which is basically something that comes out of the assets, the earnings of Lehman, Lehman had discretion not to give it to him. But if it was a commission, regardless of the profit results of Lehman, the commission had been earned by Mr. Judkins. And under the New York Labor Law, commissions are earned wages, which cannot be denied at the discretion of the employer, as opposed to bonus, which can be denied. We're not disputing that a bonus could be denied at Lehman's discretion. But this was not a bonus wage, this was a commission wage. And a commission wage is earned by the employee once the services are rendered. And the trustee does not dispute that the commission wages were not paid by Lehman or by Barclays. As to the other tranche of the compensation, and some of those arguments are the same that were made in the previous case. But actually, it's a lot simpler, quite simpler. There were two separate contracts, an independent Lehman contract, an independent Barclays contract. Under both contracts, there was an obligation to pay an amount to Mr. Judkins. Under the Barclays contract, it states that he would get $660,000 as a, quote, bonus, and another $140,000 in compensation. Barclays indeed made a payment to Mr. Judkins in February 2009 that totaled $800,000. But there's no evidence that this payment necessarily was a payment and dissatisfaction of the Lehman obligation as opposed to the Barclays independent obligation. There are two separate contracts. So you're not arguing that they owe him a discretionary bonus. You're arguing that somehow there's a separate promise with regard to a commission that they should have paid him? We're arguing that, and both sides agree, both sides dispute whether the Barclays payment made to Judkins in 2009, whether or not that satisfied the Barclays obligation under the Barclays contract, or whether it satisfied also the written up guaranteed bonus obligation under the Lehman contract. The obligation to do what? Obligation to pay a further bonus, or obligation to pay something that's different than what's pursuant to the discretionary written bonus policy? Obligation to satisfy the written contract bonus. And we're saying that in addition to that written contract, at the time of hire, Lehman promised Mr. Judkins a separate compensation that really was commission based. And this is not, quote, a bonus. This was an earnable wage. And there's no dispute by either side that that wage was not paid. Both Judge Chapman and Judge Schofield essentially held that Judkins could not state, as a matter of law, a cause of action for that commission payment, because that payment was not reduced to writing. And as a matter of law, that is not correct under the New York Labor Law, Section 190, which does not require a commission wage to be in writing, as opposed to a bonus wage, which must be in writing. But it was not- Is there something in his contract that says that he's entitled to a commission on top of his salary and bonus? No, there's nothing in the written contract which says that. But this promise was made to Mr. Judkins orally at the same time of hire. And for that reason, he agreed to accept a lesser guarantee bonus, thinking that he would make a larger amount of commission at the end of the year. And had indeed, and had Lehman not gone under, he would have done that. That was his calculation. And as to the, and there is evidence as well that Barclays did not consider the payment that he made to Mr. Judkins as satisfaction of the Lehman written contract. Is the $800,000 payment? Yes. And that was in March 15th, 2009? Yes, Your Honor. Yes, Judge Labeson. So that's only six months after he joined Barclays. Yes, Your Honor. So your argument is that that was in compensation for, that was a sign-up bonus at Barclays as opposed to payment of the 2008 bonus? Yes, Your Honor, and that was a point that, yes, Your Honor, I'm not sure I have to say anything else to that point. But that's the point that Judge Chapman made, that she felt it was incredible that Barclays would pay him that much for four months. What was she missing in that? Well, she's missing that it was a sign-up bonus, that he did have other options, other than, that's not part of the record, he did have other options. He was a highly desired trader, and that he did earn money for Barclays during that time. He was not doing nothing during that four or five months. What's the evidence that that was a sign-up bonus? The evidence seems to be before the judge was that he responded to the emails that said, look, if you want to be a transferred employee, let us know and we will take you on as an employee. Where is there some evidence that there were some other negotiations with regard to how he was going to be compensated or that he was going to be compensated any differently than he was compensated previously? I agree, there's no evidence that it was a sign-up bonus. We're just trying to understand the possible motivation of Barclays. There's no evidence that that was a sign-up bonus. But there is evidence, though, that when Mr. Judkins terminated from Barclays in 2009 and signed a separation agreement, and that separation agreement, Barclays stated that we have paid you your Barclays bonus specifically. And it also specifically stated that you're not releasing Lehman or waiving any claims against Lehman. And Judge Chapman did not even address that point. Thank you. Thank you. Good morning again, your honors. May it please the court. Let's start with the $800,000, the bonus that was paid by Barclays. In this case, it's a straightforward, even a more straightforward application than the previous case, I would say, of the law of delegation. Because here, you don't have that 2007 issue with the additional money. Here, there's no question, there's no dispute that Mr. Judkins had a written agreement with LBI for an $800,000 bonus. There's no dispute that upon the asset purchase agreement taking effect, when Barclays made the offer via email, he accepted it. He went immediately to Barclays. He then has an agreement with Barclays that also pays him $800,000. It's initially split between cash and equity, but ultimately the record's not disputed that he was paid that amount in cash. He was paid the $800,000. He falls within the definition of a transferred employee. And therefore, there's no question he falls within the scope of the delegation of the asset purchase agreement. So under the law of delegation, under the Hedrick Tenth Circuit case, under the restatement of contracts, this is clearly an instance where A owes C $100, asks B to pay C the $100. If B pays C the $100, that has the same effect as that discharges A's obligation. So that's what we have with respect to the $800,000 bonus, the guaranteed bonus. With respect to any additional amounts, I don't believe that this commission-based argument was actually raised below. Certainly, it's true that both lower courts treated this as a request for a discretionary bonus. That's the language the bankruptcy court and the district court use. There's no dispute in the record that LBI's bonus policy states that bonuses, you only get a bonus if you have it in writing. That's clearly in the bonus document. And Mr. Judkins himself acknowledged that he understood that anything over and above the $800,000 was not guaranteed, and that LBI could have paid him only the $800,000. He acknowledged that on the record as found by the bankruptcy court. So under the New York Court of Appeals case of Hall versus UPS, that held that your entitlement to a bonus is governed by the bonus plan, and the bonus plan says it had to be in writing. And Mr. Judkins understood that, there's no question, he's not entitled to any amount over and above the $800,000. And that same argument takes care of any argument under the labor law as well, because in order to be entitled to any wages under the labor law, you have to have a contractual right to them. So flowing from the fact that there was no contractual right to anything over and above the $800,000, that disposes of the labor law claim as well, and the cases that make that clear are cited in our brief. The last point that I would make, so if there's any questions, of course, that your honors have, is that there's this issue of this other document that was signed after Mr. Judkins' separation from Barclays. And in that agreement, first, when it says that he acknowledges that he was paid his bonus, and in handwriting it has Barclays sort of interlineated, so it says Barclays bonus. I don't think there's any record evidence as to what that actually meant. But even if it means Barclays bonus, I don't think that's inconsistent with the fact that he was paid the bonus by Barclays. The issue is just that pursuant to the law of delegation, it satisfied LBI's bonus obligation. There's also written in handwriting that nothing in this agreement will waive any claim he has against LBI. Now, this agreement was signed later, after he had already made this claim against LBI. But again, we'd submit that's irrelevant because the trustee's not relying on his separation agreement for having waived any claim he had against LBI. What satisfies the claim that he had against LBI was his payment of the $800,000 guaranteed bonus by Barclays. So subject to any other questions your honors have. So I- Thank you. Thank you, your honor. We'll hear rebuttal. Your honor, just a few points. Mr. Fitzpatrick is correct in that we did not use the term commission wage in our arguments. But we did use the term wage, and we didn't quite articulate it in terms of commission wage. But we did argue in terms of a wage versus a bonus. And quite frankly, this morning, thinking about this case, it crystallized in my mind that really it was a commission wage versus a bonus wage. But the argument was made. And the other point is, as to what Mr. Jenkins understood, again, it's correctly he thought that the amount was the additional compensation was discretionary, but he didn't know the law. So what he thought or believed is not relevant, in my opinion. What he believed he was entitled to. He did not know his legal rights. And as to that third document, I happened to be the attorney that negotiated that document. I was there, and we were concerned with this very thing happening, that somehow or another, Mr. Jenkins, would it be deemed to have waived his rights by signing this agreement. So we put in there that Barclays only paid his Barclays bonus. I was there, so I know what was intended by this document, and was specifically intended to preserve his rights against Lehman, against this very type of attack. It wouldn't make any sense if it said Lehman's bonus, would it, because Lehman's not paying it. If, as the trustee claims, that Barclay was paying the Lehman's bonus, yes, at Lehman's delegation, it would make sense to say, we are taking care of- Nobody wants a bonus from Lehman, because they can't pay it. But it would make sense to say, we're undertaking our contractual obligation to Lehman, so you cannot sue us, Lehman, based on breach of our obligation under the APA. So we have paid Jenkins, we have satisfied, we have discharged that so-called delegated obligation to Jenkins. That would have been the reason to say that. Thank you, Your Honor. Thank you. Thank you. Thank you. Thank you both. We'll reserve decision. The case of United States versus Griffin is taken on submission. And the case of Hayes versus Smith and Wesson is taken on submission. That's the last case on calendar. Please adjourn court. Court is adjourned.